JAMES D. MORRISON *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 16, 1902—Rehearing denied June 4, 1902.*

1. INDICTMENT—*when indictment sufficiently charges violation of Civil Service act.* An indictment charging that defendants, the acting civil service commissioners of Cook county, certified to the appointing officer the name and address of a named party for appointment as assistant engineer without subjecting him to a public competitive examination, and without giving notice of the time and place and general scope of the examination, as provided by law, sufficiently charges a violation of the County Civil Service act of 1895.

2. CONSTITUTIONAL LAW—*County Civil Service act does not embrace a subject not expressed in its title.* The County Civil Service act of 1895, (Laws of 1895, p. 137,) being "An act to amend section 61 of an act entitled 'An act to revise the law in relation to counties,'" etc., fairly falls within the subject matter of the original act and is germane to the general subject expressed in its title, and is not unconstitutional in that respect.

3. SAME—*County Civil Service act does not violate section 7 of article 10 of the constitution.* The legislature, in providing, by paragraph 10 of the County Civil Service act, (Laws of 1895, p. 141,) for the appointment of the civil service commission by the president of the county board, did not take out of the hands of the commissioners of Cook county the management of the county affairs, in violation of section 7 of article 10 of the constitution.

4. SAME—*County Civil Service act does not confer franchise upon president of county board.* The legislature, by the provisions of the County Civil Service act, properly conferred upon the president of the county board the power to appoint the civil service commission, and in so doing they did not confer a franchise upon him, in violation of section 22 of article 4 of the constitution. (*Lasher* v. *People,* 183 Ill. 226, distinguished.)

5. EVIDENCE—*admissibility of document bearing stamped signature.* The facts that a certificate of eligibility, under the County Civil Service act, bears the stamped signatures of the chairman and secretary of the commission, which certificate, in due course of business, found its way to the president of the county board, for whom it was intended, and which he acted upon in making the appointment, and that such chairman and secretary had a stamp like the one attached, which they used in their official capacity, raise a presumption that the certificate was duly issued by the commission, and justifies its admission in evidence against them upon their trial for issuing such certificate in violation of law.

6. CIVIL SERVICE—*when commissioner cannot say that issuing of certificate was not his act.* If an illegal certificate of eligibility is made under the rules of the civil service commission, which provide that such certificates shall be signed only by the chairman and secretary, the other member of the commission, who, under the rules of the commission, must be held to have acted, cannot say that the certificate was not his act because his name is not attached thereto.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

McEWEN & WEISSENBACH, for plaintiffs in error.

H. J. HAMLIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and A. C. BARNES, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

The plaintiffs in error were indicted at the January term, 1901, of the criminal court of Cook county, as members of the civil service commission of said county, for an alleged violation of the provisions of the County Civil Service act, in force July 1, 1895. A motion to quash the indictment, and each count thereof, having been overruled, a plea of not guilty was entered, and upon a trial before a jury the plaintiffs in error were found guilty and each sentenced to pay a fine of $250, and the record has been brought to this court for further review.

The indictment contains two counts. The first count charges that the defendants, "on the seventeenth day of May, in the year of our Lord one thousand nine hundred, in said county of Cook in the State of Illinois, aforesaid, being then and there the acting civil service commission of Cook county, aforesaid, unlawfully, willfully and through culpable negligence, then and there did certify to the appointing officer, to-wit, James C. Irwin, then and there being the president of the board of commissioners of Cook county aforesaid, the name and address of one Charles McLean as entitled to appointment to the position of assistant engineer in the classified civil service

in said county, as classified by and under class D, rule 1, of the civil service rules theretofore made and adopted and promulgated by the said civil service commission of Cook county, and then and there being in force, which said rule 1 is in the words and letters as follows, to-wit: 'The following is hereby adopted as the classification of the places of employment in Cook county coming under the jurisdiction of the board of civil service commissioners with reference to examination for appointment under the Civil Service act. * * * Class 'D.' All positions to be filled by persons skilled in any one of the trades, and their assistants, including elevator men,' * * * without then and there or at any time prior thereto subjecting said Charles McLean to a public and competitive examination for said position of assistant engineer, as by law required."

The second count charges that the defendants, "on the seventeenth day of May, in the year of our Lord one thousand nine hundred, in said county of Cook, in the State of Illinois, aforesaid, being then and there the acting civil service commission of Cook county, aforesaid, unlawfully, willfully and through culpable negligence then and there did subject one Charles McLean to examination for the position of assistant engineer in the classified civil service of said county, as classified by and under class D of rule 1 of the civil service rules theretofore made, adopted and promulgated by the said civil service commission of Cook county, then and there in force, which said rule 1 is in the words and letters as follows, to-wit: 'The following is hereby adopted as the classification of the places of employment in Cook county coming under the jurisdiction of the board of civil service commissioners with reference to examination for appointment under the Civil Service act: * * * Class 'D.' All positions to be filled by persons skilled in any one of the trades, and their assistants, including elevator men,' * * * and did then and there certify to the appoint-

ing officer, to-wit, James C. Irwin, then and there being president of the board of commissioners of Cook county aforesaid, the name and address of said Charles McLean as entitled to appointment to the said position of assistant engineer in the classified civil service of said county as classified by and under class D of rule 1 of the said civil service rules theretofore made, adopted and promulgated, as aforesaid, and then and there in force, as aforesaid, without first having given notice of the time and place and the general scope of an examination to be held at the time and place of the said examination of said Charles McLean of applicants for such position in such classified service by said commission, by publication for two weeks preceding such examination then and there made of said Charles McLean, in a daily newspaper of general circulation published in said county, as provided and required by law."

It is first contended the court erred in failing to sustain the motion to quash the indictment.

Paragraph 10 of the County Civil Service act (1 Starr & Cur. Stat.—2d ed.—p. 1102,) provides for the appointment of a civil service commission in Cook county, consisting of three persons, by the president of the county board of said county; that two of such commissioners shall constitute a quorum; that not more than two members shall at the time of appointment be members of the same political party; that said commissioners shall hold no other lucrative office or employment under the United States, the State of Illinois, or any municipal corporation or political division thereof; that each commissioner, before entering upon the duties of his office, shall take the oath prescribed by the constitution of this State. Paragraph 11 provides the president of the county board may, in his discretion, remove any commissioner for incompetency, neglect of duty or malfeasance in office, and that all vacancies in the office of civil service commissioner shall be filled by appointment by said president.

Paragraph 12 provides said civil service commission shall classify all the offices and places of employment in said county with reference to the examinations in said act provided for, except those offices and places mentioned in the twentieth paragraph of said act, and that the offices and places so classified by the commission shall constitute the classified civil service of said county, and no appointments to any such offices or places, or removals therefrom, shall be made, except under and according to the rules in said act mentioned. Paragraph 13 provides said civil service commission shall makes rules to carry out the purposes of said act, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make changes in the original rules. Paragraph 14 provides for the publication of said rules and the time when the same shall take effect. Paragraph 15 provides for examinations of applicants for offices and places in said classified service, as follows: "All applicants for offices or places in said classified service, except those mentioned in the twentieth paragraph of this section, shall be subjected to examination, which shall be public, competitive and free to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character. Such examinations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include tests of physical qualifications and health, and when appropriate, of manual skill. No questions in any examination shall relate to political or religious opinion or affiliations. The commission shall control all examinations, and may, when an examination is to take place, designate a suitable number of persons, either in or not in the official service of said county, to be examiners, and it shall be the duty of such examiners, and, if in the official service, it shall be

a part of their official duty without extra compensation, to conduct such examination as the commission may direct, and make return or report thereof to said commission, and the commission may at any time substitute any other person, whether or not in such service, in the place of any one selected, and the commission may themselves at any time act as such examiners, and without appointing examiners. The examiners at any examination shall not all be members of the same political party." Paragraph 16 provides for notice of said examinations, and is as follows: "Notice of the time and place and general scope of every examination shall be given by the commission by publication for two weeks preceding such examination in a daily newspaper of general circulation published in said county, and such notice shall also be posted by said commission in a conspicuous place in their office for two weeks before such examination. Such further notice of examination may be given as the commission shall prescribe." Paragraph 17 provides that the commission, from the returns of the reports of the examiners, or from the examinations made by the commission, shall prepare a register for each grade or class of positions in the classified service of said county of the persons whose general average standing upon examination for such grade or class is not less than the minimum fixed by the rules of such commission, and who are otherwise eligible, and such persons shall take rank upon the registers as candidates in the order of their relative excellence as determined by examination, without reference to priority of time of examination. Paragraph 19 provides for the method of appointment to said classified service, and is as follows: "The head of the institution, department or office in which a position classified under this act is to be filled, shall notify the president of the board and said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the regis-

ter for the class or grade said position belongs to, except that in cases of laborers where a choice by competition is impracticable, said commission may provide by its rules that the selection shall be made by lot from among those candidates proved fit by examination. In making such certification, sex shall be disregarded, except when some statute, the rules of said commission or the appointing power specifies sex. Said appointing officer, meaning thereby the president of said board, shall notify said commission of each position to be filled separately, and shall fill such place by the appointment of the person certified by said commission therefor, which appointment shall be on probation for a period to be fixed by said rules. At or before the expiration of the period of probation the officer having the power of appointment may, with the consent of said commission, discharge such person so appointed on probation upon assigning in writing to said commission his reasons therefor." Paragraph 41 provides: "Any person who shall willfully, or through culpable negligence violate any of the provisions of this act or any rule promulgated in accordance with the provisions thereof shall be guilty of a misdemeanor and shall, on conviction thereof, be punished by a fine of not less than fifty dollars and not exceeding one thousand dollars, or by imprisonment in the county jail for a term not exceeding six months, or by both such fine and imprisonment in the discretion of the court." Under the provisions of paragraph 15 all applicants for offices or places in said classified service, except those mentioned in the twentieth paragraph of said act, within which exception the position of assistant engineer does not fall, shall be subjected to examination, which examination shall be public, competitive, and held only after notice of the time and place and general scope of such examination shall have been given by the commission in the manner provided in paragraph 16 of said act. The indictment charges that the plaintiffs in error certified to

the appointing officer the name and address of Charles McLean for appointment to the position of assistant engineer without subjecting him to a public, competitive examination, and without having given notice of the time and place and general scope of the examination at which he was examined, as provided by law. We are of the opinion the indictment sufficiently charges a violation of the provisions of said act.

It is further contended that the Cook County Civil Service act is unconstitutional, first, because the act embraces a subject not expressed in the title; second, because it deprives the board of Cook county commissioners, in part, of the management of the county affairs conferred upon them by section 7, article 10, of the constitution; and third, because it grants a franchise in the power it confers upon the president of the county board to appoint the civil service commission. The title of the act reads: "An act to amend section 61 of an act entitled 'An act to revise the law in relation to counties,' approved March 31, 1874, as amended by the act of May 20, 1879, relative to Cook county, as amended by act approved June 14, 1887, in force July 1, 1887."

Section 13, article 4, of the constitution, contains the following language: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The act in question was passed in the form of an amendment to section 61 of an act entitled "An act to revise the law in relation to counties," approved March 31, 1874, which section had theretofore been amended May 20, 1879, and again on June 14, 1887. The amendment fairly falls within the subject matter of the original act and is germane to the general subject expressed in its title, which is all that is required by the constitutional provision above quoted. *O'Leary* v. *Cook County*, 28 Ill. 534; *People* v. *Blue Mountain Joe*, 129 id. 370; *Potwin* v. *Johnson*, 108 id. 70.

In *People* v. *Blue Mountain Joe, supra,* it is said (p. 377): "If * * * the subject matter of the section under consideration is germane to the general subject expressed in the title, or forms a subordinate branch or part of such general subject, it must be held as embraced within the title of the act."

Section 7, article 10, of the constitution, is as follows: "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be provided by law."

It is urged that by reason of the fact that paragraph 10 of the County Civil Service act authorizes the president of the county board to appoint the civil service commission without the advice and consent of the board of county commissioners, it deprives the board of county commissioners, in part, of the management of the affairs of Cook county and is therefore unconstitutional and void. Under the provisions of said Civil Service act it is the duty of the civil service commission to determine what applicants are eligible for appointment to the offices and places of Cook county which are to be filled under the classified service created by said act, and to certify such eligibles to the president of the county board, whose duty it is to fill such offices and places from the persons certified to be eligible by the civil service commission. It is therefore apparent that the only office of the civil service commission is that of an examining board, whose duty it is to report the result of its examinations to the president of the county board, and that the president of the county board has no power other than to fill the offices and places within the classified service by appointment of the persons certified to him by the civil service commission as eligible for such positions, the object being to fill the offices and places which fall within the classified service by persons, only, who have shown

themselves by a public, competitive examination to be qualified and eligible to fill such positions under the law. We have no question of the power of the legislature to create such classified service, and to provide a method by which the offices and places which fall within such classified service shall be impartially filled from those alone who have proven themselves qualified and eligible by a public, competitive examination. Neither do we doubt the power of the legislature to empower the president of the county board to name a commission or board of examiners whose duty it shall be to determine, by a public, competitive examination, the persons who are qualified and eligible to appointment to the offices and places included within such classified service. The legislature, in providing for the appointment of the civil service commission by the president of the county board, did not take out of the hands of the commissioners of Cook county the management of the county affairs of said county.

In *People* v. *Kipley*, 171 Ill. 44, in construing the City Civil Service act and the constitutional power of the General Assembly in relation thereto, we said (p. 65): "In this State, when the General Assembly creates a municipal government, it has the power to provide the manner of filling the offices of such government. The legislature may select any means for the administration of the municipal government which it thinks best adapted to that end. It may provide for the election of municipal officers by the people, or may authorize any officers or persons to fill the offices by appointment. (*People* v. *Morgan*, 90 Ill. 558.) It has therefore the right to enact a law which provides that appointments to municipal offices or positions shall be made according to merit and fitness, and that such merit and fitness must be ascertained by a competitive examination."

It is further contended that the act is in conflict with section 22 of article 4 of the constitution, in this: that it grants a franchise to the president of the county board

in conferring power upon him to appoint the civil service commission. In *People* v. *Kipley, supra,* and *People* v. *Loeffler,* 175 Ill. 585, we held the act to regulate the civil service of cities constitutional. That act confers upon the mayor the power to appoint the civil service commission. If the legislature has the power to confer upon the mayor the power to appoint the civil service commissioners under that act in cities, we see no reason why it has not the power to confer upon the president of the board of Cook county the power to appoint the civil service commission under this act. The case of *Lasher* v. *People,* 183 Ill. 226, relied upon by plaintiffs in error, held a statute unconstitutional because under it the legislature attempted to vest the power of appointment in a private corporation. That case is not controlling here. The legislature properly conferred the power upon the president of the board to appoint said commission, and in so doing a franchise was not conferred upon him.

It is further contended the court erred in admitting in evidence the certificate issued to Charles McLean bearing the stamped signatures of James D. Morrison, chairman, and George W. Lovejoy, secretary of the said commission, without proof of their signatures. The undisputed evidence showed that Morrison was president and Lovejoy secretary of the commission; that they had in their office, which they used in their official capacity, a stamp similar to the one used upon said certificate. The fact that said signatures, so stamped, appeared upon the certificate in question, which in the due course of business found its way to the president of the county board, for whom it was intended, and which he acted upon in making the appointment in question, raised a presumption of fact that said certificate was duly executed by the president and secretary of said commission by attaching their signatures thereto, or authorizing the same to be attached thereto with said stamp. This presumption was not conclusive, but until overcome by proof was

sufficient to authorize the court to admit said certificate in evidence. It further appeared that the certificate was made in accordance with rule 6 of said board, which required that the certificate should be signed only by the chairman and secretary; and Walter A. Lantz, who must be held to have acted under the rules of the commission of which he was a member, cannot be heard to say that the certificate was not his act, simply because his name was not attached thereto. In general, where a signature is required the party's name printed upon the instrument with his sanction will suffice.

It was sought to be shown by the cross-examination of one of the People's witnesses that at the time McLean was examined and his name placed upon the register as one eligible to appointment as assistant engineer there was no person registered therein under the designation of engineer or assistant engineer. The court sustained an objection to such examination on the ground it was not proper cross-examination. Plaintiffs in error then offered to make the witness their own witness, whereupon the court held such evidence to be immaterial and refused to hear the same. The court did not err in this, as the board was not justified by reason of that fact in certifying for appointment one examined otherwise than as by law required.

A number of objections are made to the rulings of the court in giving, refusing and modifying instructions. We do not deem it necessary to take up and discuss said instructions separately, as it would serve no useful purpose, and the points raised have been mainly disposed of by what has been heretofore said in this opinion. Suffice it to say that we have carefully considered each of said instructions and what has been said with reference thereto by the respective parties in their briefs filed herein, and have reached the conclusion that the court committed no reversible error in its rulings thereon.

The judgment of the criminal court will be affirmed.

196—30                                    *Judgment affirmed.*