STATE, EX REL. WILLIAM T. THOMPSON, ATTORNEY GENERAL, RELATOR, v. JOHN L. NEBLE, RESPONDENT.

STATE, EX REL. WILLIAM T. THOMPSON, ATTORNEY GENERAL, RELATOR, v. JOHN LATENSER, RESPONDENT.

FILED SEPTEMBER 16, 1908. NOS. 15,715, 15,716.

Constitutional Law: CITIES: PARK COMMISSIONERS: APPOINTMENT. Section 1, art. II of the constitution of the state, provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." The charter of cities of the metropolitan class (Comp. St. 1907, ch. 12a) provides that the mayor shall be the chief executive officer of the city; shall have power, by and with the consent of the city council, to appoint all officers deemed necessary for the good government of the city, unless otherwise provided in the charter, and that he shall have the superintending of all officers and affairs of the city, except when otherwise provided. The charter also provides for a board of five park commissioners, whose duties are wholly executive and administrative, and who are responsible alone to the city, and whose reports and recommendations are made to the mayor and council exclusively. They perform no judicial functions or duties; have no connection with, and are in no sense responsible to, the district court or any of the judges thereof. *Held*, That that part of section 55 of the charter which provides for their appointment by the judges of the district court of the judicial district in which such cities shall be situated is unconstitutional and void, and that the appointing power is with the mayor and council.

ORININAL application for writs of *quo warranto* to determine the rights of respondents to the office of park commissioner of the city of Omaha. *Judgment for respondent Neble and against respondent Latenser.*

*H. E. Burnam* and *John A. Rine,* for respondent Neble.

*Francis A. Brogan,* for respondent Latenser.

. REESE, J.

These two actions arise out of the following facts:  In the charter of cities of the metropolitan class (Comp. St. 1907, ch. 12a) the authority is conferred upon the mayor of such cities, "by and with the consent of a majority of the entire council to appoint all officers that may be deemed necessary for the good government of the city, unless otherwise provided for in this act."  Section 26. By section 54 it is provided: "In each city of the metropolitan class there shall be a board of park commissioners who shall have charge of all the parks and public grounds belonging to the city, with power to establish rules for the management, care and use of public parks, parkways and boulevards, and * * * from time to time to devise, suggest and recommend to the mayor and council a system of public parks, parkways and boulevards or additions thereto within the city, or within three miles of the limits thereof, and to designate the lands, lots or grounds necessary to be used, purchased or appropriated for such purpose." Section 55 is as follows: "Said board of park commissioners shall be composed of five members, who shall be resident freeholders of such city and who shall be appointed by the judges of the district court of the judicial district in which such city shall be situated.  It shall be the duty of said judges, a majority concurring, to appoint or reappoint one of said board each year on the second Tuesday of May, and to fill for the unexpired term any vacancies existing in the board.  A majority of all the members of the board of park commissioners shall constitute a quorum."  This section was enacted in 1889, and, in accordance with its provisions, the judges of the district court appointed the park commissioners, and continued to do so until the decision of this court of the case of *State v. Moores,* 55 Neb. 480, which occurred June

23, 1898, and by which it was held that the law author-
izing the governor to appoint the members of the board
of fire and police commissioners was unconstitutional and
void. The judges then declined to make further appoint-
ments, as it would naturally follow that the same rule
would have to be applied in the matter of the appoint-
ment of park commissioners. On December 4, 1901, the
case of *Redell v. Moores,* 63 Neb. 219, was decided, by
which the conclusion reached in the former case was not
sustained, and the holding was set aside and the decision
overruled. For reasons which were no doubt well founded,
the judges made no further appointments until May, 1908,
when they made the appointment of defendant Latenser,
as required by the section above copied. In November,
1898, the city council of Omaha passed an ordinance No.
4,530, which authorized the mayor to appoint the park
commissioners by and with the consent and approval of
the council, and the membership of said commission has
been supplied by his appointments until the present time;
the defendant Neble being one of the mayor's appointees.
These actions are brought in the name of the state upon
the relation of the attorney general for the purpose of
procuring an adjudication of the question as to who has
the power of appointment under the constitution and
law of this state.

It is the contention of counsel for defendant Neble that
that part of section 55, above quoted, which authorizes the
judges of the district court to appoint the park commis-
sioners, is unconstitutional and void as violative of sec-
tion 1, art. II of the constitution of this state, for the
reason that it imposes the duty of appointment upon the
judicial department of the state, while the duty of ap-
pointment calls into action an executive or administrative
function, which can, under the constitution, be exercised
only by executive or administrative officers. It is the
contention of counsel for defendant Latenser that the
provision objected to is valid for the reason, first, that
the section of the constitution can refer only to the de-

partments of the state government, and has no reference or application to the government of municipalities and the subordinate departments, or local government; and, second, that, if the constitution were to be so applied, the appointment by the judges would still be valid, as the mere act of appointment is neither an executive, administrative or judicial act, or in any degree subject to the usual classification of those functions. The two cases have been consolidated here, and are to be disposed of as one, each involving identically the same question, and are submitted on oral argument and exhaustive printed briefs. We may say at the outset that the principle of local self-government has not been invoked or discussed by counsel in this case, and the only question presented for our determination is the one first above stated.

In the investigation of this question we are confronted with the unusual and anomalous condition of meeting with many apparently well-considered cases sustaining every contention of either side, and it will be absolutely impossible for us to follow any line of decisions which will not be antagonized by holdings in many other cases, for there is a sharp conflict of authority upon every conceivable feature and phase of the case. It could serve no good purpose for us to discuss and attempt to harmonize the views of Montesquieu, Jefferson, Madison, Hamilton, Stevens, Wilson, Goodnow and others upon the question here involved, for the reasons that it would be impossible to bring harmony out of the chaos produced by their divergent opinions, and that such discussion would extend this opinion to an unreasonable length, ending where we begin, and for the further reason that the time at our disposal is not adequate to the task. We will, therefore, be content with a brief reference to some of the later decisions, and an effort to arrive at the spirit and meaning of our own constitution as interpreted by the courts, the legislature and the judicial and administrative history of the state.

The provision of the constitution (art. II, sec. 1) that

"the powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted," is not a new one in the constitutions of this country. It has been handed down from the best thinkers and greatest statesmen of the nation to nearly all state constitutions in one form or another, and, even where not adopted in terms, it has been almost uniformly recognized as a part of our governmental system (*State v. Brill,* 100 Minn. 499), but has never been strictly applied, and indeed could not be, to all the ramifications of state or national government. The duties of the officers of the several departments have, to some extent at least, overlapped and interlaced until it is hard to say in some cases where the one leaves off and the other begins. Many times the courts have defined certain duties of the executive or administrative officers as *quasi* judicial, and recognized and confirmed the validity of the acts of such officers. While this definition has been approved and sanctioned by all, yet the fact remains that the *function* of the act itself is *either* administrative or judicial, and there can in reality be no middle or half way ground between them. This being true, we are brought to the conclusion that many executive or administrative acts performed by judicial officers, and many judicial acts performed by ministerial officers, are and must be held valid, notwithstanding the section of the constitution above quoted. Thus, it often becomes necessary to the full and proper discharge of the duties imposed upon an official belonging to one class to perform an act the function of which, strictly speaking, belongs to another. The performance of such duties being, to some degree at least, essential to the full discharge of the duties imposed and properly within the power of the actor, the power conferred must be held to be valid; otherwise a condition of chaos would arise. We therefore conclude, as all have

done, that the constitution must receive a liberal and general, rather than a strict, construction and application, and that every case must stand or fall relying upon its own merits. In theory the constitution is accepted as stating the one inflexible and unbending rule; yet in practice it is found impossible to obey its every mandate.

It is unnecessary to cite the statutory provisions conferring this "*quasi*" authority, which is, strictly speaking, an evasion of the rule, and which are sustained, for the statutes of all the states, as well as of the general government, are full of them. An apt illustration of this may be found in the office of the state superintendent of public instruction. By section 1, art. V of the constitution, it is declared: "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of public accounts, treasurer, superintendent of public instruction, attorney general, and commissioner of public lands and buildings"; thus clearly classing the superintendent of public instruction with the officers of the executive department. Yet it is within common knowledge that he is clothed not only with executive, but judicial, and to some extent with legislative powers, the judicial to perhaps as full extent as the executive. His decisions (judicial) upon all subjects determinable by him within his department are binding upon county superintendents, teachers and school boards, unless reversed or overruled by a court having the required jurisdiction. Many other executive officers possess these same judicial powers, but in a less degree perhaps, among which might be mentioned the auditor of public accounts, sheriffs, coroners, county superintendents, and the various state, county and other boards. The conferring and exercising of the powers prescribed are seldom, if ever, questioned, and are recognized as legal. Were such not the case, it would be practically impossible to execute and enforce the laws applicable to the various departments. If there is a limitation upon the authority of the legislature to confer these powers, it must be found in the well-known

rule that an authority conferred carries with it all other powers necessary to the discharge of the general duty imposed, and that the power is limited to that extent; in other words, that the conferring of judicial powers upon an executive or administrative officer can extend to such acts as may be necessary to enable the proper discharge of the duty, or to set in motion such other agencies as may be necessary to the complete discharge of the duty required to be performed. The appointment of an officer might properly, we think, be classed as the exercise of an executive or administrative function, at least not judicial. Yet courts and judges frequently find it necessary to make such appointments in order that the judicial functions of the courts may be freely exercised. It often happens that courts or judges are clothed with this appointing power where the appointee may not be required to discharge any duty which could be in any way ancillary to the exercise of the judicial functions of the court or judge making the appointment, and yet the validity of the appointment could not be successfully questioned, for the reason that the person appointed would exercise judicial functions in the discharge of the duties imposed under the appointment. We think, however, that we may safely say that the appointment of park commissioners for cities of the metropolitan class is not the exercise of a judicial function. It may not belong to either class, but it is clearly not judicial. We think also that the duties imposed upon the park commissioners cannot be said to call for the exercise of judicial functions. Section 54, ch. 14, laws 1905, provides that such commissioners "shall have charge of all the parks and public grounds belonging to the city, with power to establish rules for the management, care and use of public parks, parkways and boulevards, and it shall be the duty of said board from time to time to devise, suggest and recommend to the mayor and council a system of public parks, parkways and boulevards or additions thereto within the city, or withi(

three miles of the limits thereof, and to designate the lands, lots or grounds necessary to be used, purchased or appropriated for such purpose." By section 56 it is further declared that they shall "lay out, improve and beautify all lands, lots, or grounds now owned, or hereafter acquired for parks, parkways, or boulevards. They may employ a secretary and such landscape gardeners, superintendents, engineers, keepers, assistants or laborers, as may be necessary for the proper care and maintenance of such parks, parkways or boulevards, or the improvement or beautifying thereof, to the extent that funds may be provided for such purpose." These duties are in the main, if not exclusively, administrative. We find nothing in the act conferring any power or jurisdiction over the board by the judges, whether advisory or otherwise; nor is the board required to report to them upon any part or in any particular as to any action proposed or performed by it. In so far as advice, recommendations, suggestions, or consultations go, they are with the mayor and council exclusively.

The question then arises: Is it competent for the legislature under the limitations of the constitution to confer the power of appointment alone upon the judges of the district court of the judicial district in which cities of the class named are located, some of whom reside within the city, and some who do not? It is contended by counsel representing the appointee of the judges that the appointment by them is not the exercise of a judicial function; that no action is taken or to be taken as a court, but that a majority of the persons who are holding the offices join together in selecting the commissioners. There is nothing requiring any court record of the appointment to be made, and we think, if it be said that the term "judges" is nothing more than a description or method of designation of the persons who are to discharge that duty, it might occur that a majority or possibly all the persons designated might be not only nonresidents of the city, but of the county in which the city is situated; and a serious ques-

tion might then arise as to the power of the legislature to transfer the government of the city in whole or in part to nonresident private citizens, if they are to be so treated, having no interest whatever in the care or management of city affairs. The adoption of the view that the judges would not act as judges by virtue of their several offices would lead us into devious paths, from which it would be hard to find a way of escape. The mayor of a city of the class named is usually considered as the chief executive officer of such city, and the administration of the municipal affairs thereof is committed to him and the city council. The park commissioners become a part of this administrative force, and they are responsible to the city alone. As we have said, the duties to be discharged by them are in no sense judicial, and do not call into action any judicial function. They do not render any service which would assist the judges in the discharge of any judicial duties imposed upon them by law. They are clearly executive or administrative officers, owing no duty whatever to the judges from whom they receive their appointment. The naked power of appointment is the sole duty devolving upon the judges in connection with the commissioners, or the offices which they fill.

As we view the case, the first question demanding our attention is: "Is this power of appointment under these circumstances the exercise of a judicial function?" From the examination of the cases cited and others to which we have had access, we are led to the belief that it is not, but that it is executive or administrative in its essence. In the investigation of this question, as in all others arising in this case, we encounter a sharp conflict in the authorities, although it is claimed by some writers that the weight of authority is in favor of the negative of the proposition. In *State v. Brill*, 100 Minn. 499, it is said: "Although there are some decisions to the contrary, it is generally conceded that the power to appoint to a public office is in its nature an executive function." In *State v. Washburn*, 167 Mo. 680, 67 S. W. 592, it is said:

"To provide by law the manner in which an appointment shall be made is one thing, to make the appointment is another; the one is in its nature legislative, the other is essentially executive. * * * The act of filling a public office by appointment is essentially an administrative or executive act, and, under the constitution, can be exercised only by an officer charged with the duty of executing the laws."

In *In re Supervisors of Election*, 114 Mass. 247, the statute provided that, "whenever, prior to an election, five legal voters of any ward of a city shall make known in writing to a justice of the supreme judicial court, in term time or vacation, their desire to have such election guarded and scrutinized, it shall be the duty of such justice * * * to appoint and commission two legal voters of such ward, who shall be of different political parties, and who shall be known and designated as supervisors of election." A petition was duly presented to Chief Justice Gray, asking that the appointments be made for a certain ward in the city of Boston. Instead of taking action upon the petition, the chief justice gave notice of a hearing, and assembled four of the seven members of the court, when the subject was presented by able counsel. The result of the hearing was a unanimous opinion that the law imposing the duty of appointment upon the judges was unconstitutional and void. In the opinion it is said: "These supervisors, although entrusted with certain discretion in the performance of their duties, are strictly executive officers. They make no report or return to the court or to any judge thereof. Their duties relate to no judicial suit or proceeding, but solely to the exercise by the citizens of political rights and privileges. We are unanimously of opinion that the power of appointing such officers cannot be conferred upon the justice of this court without violating the constitution of the commonwealth. We cannot exercise this power as judges, because it is not a judicial function; nor as commissioners, because the constitution does not allow us to hold any such office."

The petition was denied. In Mechem, Public Offices and Officers, sec. 104, it is said: "So it is said that appointments to office, whether made by judicial, legislative or executive officers or bodies, are in their nature intrinsically executive acts."

This being true, we next inquire whether under the constitution, it is competent for the legislature to impose the burden of appointing executive officers upon judicial officers. Our attention has been called to a number of cases, which are thought to be in point upon the question, and which we will briefly notice. It is insisted by counsel for the mayor's appointee that the case of *Tyson v. Washington County*, 78 Neb. 211, is directly in point as sustaining the contention that the provision requiring the judges to make the appointment is violative of the constitution. We cannot see that such is the case, as the question there was whether the district court could take jurisdiction of and entertain an appeal from the action of the county board in directing the construction of a drainage ditch. It was held that, as the order of the board was purely administrative in its character, the power to review their action could not be conferred upon the courts. While the logic and argument of the writer of the opinion seems to sustain the contention, yet the case itself is not similar to this, nor are the principles to be applied applicable to the question here. *State v. Barker*, 116 Ia. 96, is more clearly in line with this case, but in that case the act under consideration required the appointment of waterworks trustees by the *district court*, instead of the judges thereof. The holding was that such power could not be conferred upon the courts. The logic of the case is in support of the contention here that the power cannot be conferred upon officers of the judicial department of the government. But, in view of the contention of the state, the case is to some extent dissimilar. In *State v. Brill, supra,* the legislature of Minnesota passed an act requiring the judges of the district court, or a majority of them, to appoint the members of the board of control of the

county of Ramsey. After making a number of successive appointments, the judges became convinced that the act imposing the duty upon them was unconstitutional, and refused to make other appointments. The attorney general sought a writ of mandamus from the supreme court to compel action. The writ was denied; the court holding, after an exhaustive examination, that the part of the act which required the judges to make the appointment was unconstitutional and void because it assumed to impose upon the members of the judiciary powers and functions which by the constitution were assigned to another department of the government.

The constitution of the state of Ohio contains no provision similar to that contained in the constitution of this state, dividing the powers of government into three distinct departments, and prohibiting persons of one of the departments from exercising the powers properly belonging to either of the others. The case of *Village of Fairview v. Giffee,* 73 Ohio St. 183, was where an act authorizing the court of common pleas to detach unplatted farm lands from the corporate limits of cities or villages was called in question as being unconstitutional, for the reason that it imposed legislative power upon the judiciary. The court held that, as the powers were not divided and distributed by the constitution, it was left for the legislature to do so, and for that and other reasons the act was held valid. We cannot see that that case is to be considered as authority in this one. It was also held that the act called into action no other than judicial functions and powers. The case of *People v. Morgan,* 90 Ill. 558, is in many respects similar to the one under consideration, and in which an act authorized the judge of the circuit court to appoint the south park commissioners was held valid. This is perhaps one of the leading cases in support of the constitutionality of the law, and yet it is based to a considerable extent upon the legislative and judicial history of the state on the subject of appointments of subordinate officers or agencies. It is cited and followed, generally

with aproval, but with some limitations, in *Cornell v. People,* 107 Ill. 372; *People v. Hoffman,* 116 Ill. 587; *Wilson v. Board of Trustees,* 133 Ill. 443; *People v. Nelson,* 133 Ill. 565; *Ritchie v. People,* 155 Ill. 98; *People v. Onahan,* 170 Ill. 449; *People v. Kipley,* 171 Ill. 44; *People v. Knopf,* 171 Ill. 191; *People v. Hutchinson,* 172 Ill. 486; *People v. Loeffler,* 175 Ill. 585; *Lasher v. People,* 183 Ill. 226; *People v. Raymond,* 186 Ill. 407; *Morrison v. People,* 196 Ill. 454; *Sherman v. People,* 210 Ill. 552; *People v. Board of Supervisors,* 223 Ill. 187; *City of Aurora v. Schoeberlein,* 230 Ill. 496.    We therefore conclude that the question is finally settled in that state.    But it will also appear from an examination of these cases that the particular question involved in this was not considered in all the cases as a very material inquiry.    Thus, in *Cornell v. People,* 107 Ill. 372, it is shown that the charter conferring the power of appointment upon the judge of the circuit court was submitted to the people of the municipality at an election and adopted by them.    The court say: "By the vote adopting the provisions of the act the people of the park district gave their assent that the first board of corporate authorities should be appointed by the governor of the state, and that their successors should thereafter, as often as a vacancy occurred, be appointed by the judge of the circuit court of Cook county.    This was the mode provided by the act.    To this the people of the district gave their assent, and upon no other terms or conditions did they agree to assume the burden of taxation which the corporate authorities, under the act, had the power to impose.    It may be that the governor is quite as competent to select honest and capable commissioners as the circuit judge of Cook county; but that does not affect the question.    Had the people of the district seen proper to reject the act when it was submitted for their adoption or rejection, the act could not have been imposed upon them.    They saw proper to adopt it as it was, with the plain provision that the corporate authorities should be appointed by the circuit judge of Cook county."    It is

not entirely clear to the mind of the writer just how a grave, fundamental, constitutional question can be disposed of by the submission of what is considered by many as an invalid law to the popular vote, but with that we now have nothing to do. In *People v. Hoffman*, 116 Ill. 587, the decision in *People v. Morgan*, 90 Ill. 558, is followed, but the court seem to have placed considerable stress upon the clause of the constitution which confers upon county courts, in addition to powers specifically named, "such other jurisdiction as may be provided by general law." Substantially the same provision is found in section 9, art. VI of the constitution of this state, with reference to the jurisdiction of the district court, but it is our opinion that this provision refers to the judicial powers of the court, rather than to duties which may be imposed upon the judges when not acting as courts or the making of such orders as may be necessary to enable the courts, as such, to exercise all the functions imposed by law or usage upon them. We cannot see that the clause quoted furnishes any aid in the solution of the question now in hand. In *Lasher v. People*, 183 Ill. 226, the cases of *People v. Morgan*, 90 Ill. 558, and *People v. Hoffman*, 116 Ill. 587, are referred to, and it is said: "The question mainly discussed in those cases was whether the power of appointment could be exercised by the judicial branch of the government, and in each case the law providing for the appointment was adopted by a vote of the municipality affected"—and we may safely conclude that that fact had some influence upon the decision in those cases.

It is contended that the separation of the powers of government into the three departments, as provided for in the constitution, relates to the state government alone, and is not applicable to municipal or other local bodies whose governments are created and whose offices are established by the legislature, and a number of cases are cited in support of the contention. This is undoubtedly true in theory, and in many cases in practice, and such is the real purpose of state constitutions. But there is no

State v. Neble.

limitation, aside from that imposed by federal law or constitution, upon the power of the people to include in that instrument provisions which may control the lesser divisions and subdivisions of the state, as in our present constitution. Any of such provisions may be incorporated into the fundamental law, and, when this is done, they are as binding upon the courts and legislatures as any other portion of the constitution. It therefore. follows that to that extent, at least, the constitution cannot be limited exclusively to the state government. The provision above quoted extends to all courts from that of justice of the peace and police judge to the supreme court, and applies to all judicial officers, as well as courts. We have cited but few of the many cases referred to in the briefs. As we have already said, almost every state in the Union has by its court of last resort, passed upon this identical question, and they are practically evenly divided. It is impossible for us to divest our minds of doubt as to which side belongs the weight of reason and authority. We are met by the constitutional provision, which, literally applied, would render effective government impossible, and which yet must be observed in order to maintain the liberties of the people. It is impossible to distinguish the cases for they are directly in point and upon similar facts and constitutional provisions. Much appears to have depended upon the prior training and views of the writers of the various opinions. In view of this irreconcilable conflict and for the foregoing reasons, we are impelled, but not without some hesitation, to adopt the view that so much of section 55 of the charter of metropolitan cities as requires the judges of the district court, some of whom reside in counties other than the one in which the city in question is situated, to appoint park commissioners, whose duties are wholly administrative and executive, and over whom the judges are given no supervision or control, such supervision and control being expressly and exclusively delegated to the mayor and city council, is violative of the constitution, and is therefore void. A con-.

sideration of the ability and standing of the district judiciary of the Fourth judicial district, and of the fact that the judges have long declined to make these appointments, is persuasive to us that their hesitation has been prompted by doubt as to the validity of the provision of the section under consideration.

The judgment will be in favor of the defendant Neble in case No. 15,715, and in favor of the state in No. 15,716.

JUDGMENT ACCORDINGLY.