248

## CITY OF MITCHELL, PETITIONER, v. WESTERN PUBLIC SERVICE COMPANY, OBJECTOR.

FILED JANUARY 12, 1933.   No. 28639.

*C. M. Palmer, Wright & Wright* and *Fred A. Wright,* for petitioner.

*Clarence A. Davis, Morrow & Morrow* and *Mothersead & York,* for objector.

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Goss, C. J.

This arises upon the original application of the city of Mitchell for the appointment of three district judges as a "court of condemnation;" and upon the objections of the Western Public Service Company, owner of the electric light and power plant and property sought to be acquired by the city by exercise of the power of eminent domain.

The mayor and city council certified to this court that, at a special election, held on October 4, 1932, under article 7, ch. 19 (sections 19-701 to 19-707) Comp. St. 1929, more than the required 60 per cent. of the votes cast at the election by qualified electors were in favor of the question submitted to the electors. The certificate quotes the question submitted and states that 578 votes favored it and 93 votes were against it. No objection is made to the form or facts certified. All objections made by the company attack the constitutionality of the act upon which the proceedings are based and upon which appointment by this court would be predicated. Within 30 days after the receipt of the certificate this court, in order to comply strictly with the terms of section 19-702, Comp. St. 1929, and because the parties consumed the 30 days in preparing their briefs and making their oral arguments, appointed three district judges from three judicial districts, but withheld any order requiring such judges to attend at the county seat at a stated date to organize and proceed with its duties. Full consideration of the briefs and oral arguments of the parties will determine whether such further order will be made or whether the order of appointment will be set aside.

The company makes various objections to the constitutionality of the act and to the jurisdiction of the court. One of these is that the act contains more than one subject and that the title does not express the subject covered by the act, all in contravention of that portion

of section 14, art. III of the state Constitution, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The act in question is a complete act in itself. It comprises article 7, ch. 19, Comp. St. 1929, consisting of sections 19-701 to 19-707. The title and text of the act, as passed by the legislature and first printed, are found in the 1919 Session Laws, ch. 188. The title reads: "An act relating to the exercise of the power of eminent domain by cities of the first or second class for acquiring public utility properties." The first three sections of the act extend the power of eminent domain over plants or systems of the nature involved here, provide for the appointment of three district judges as a "court of condemnation," and fix the procedure covering the ascertainment and finding of the value of such plant or system. Section 4 provides for appeal to the district court, and section 5 provides for appeal to the supreme court. Both of these latter named sections grant to the city authorities the power, for purposes of tender and payment of a final judgment as to value, to issue and sell bonds of the city "without vote of the people." The company presents this phase of its objections in the form of a question— "Is this act broad enough to include the authority to issue general revenue bonds of the city as is done by the act?" The company means, and argues, that the title is not broad enough to include the terms of the act itself providing for the issuance of bonds to pay for the property to be acquired by condemnation.

The Constitutions of about three-fourths of the states contain provisions somewhat similar to that under consideration here. Some are identical. Others have additional features. The cases under them show great variety. Many are cited by counsel. They indicate that each legislative act, including its title, must be considered by itself in determining whether it violates the constitutional provision.

"The main purpose of the constitutional provision * * * was to prevent surreptitious legislation, and not to put

the lawmakers in a straight-jacket." *State v. Johnson,* 116 Neb. 249. A title is not expected to specify minutely all the provisions of the act; the court will not be warranted in holding that an act of the legislature is void because a better title might have been adopted, if the general purpose of the act is expressed by the title, and the matter contained in the body of the act is germane thereto. *State v. Ure,* 91 Neb. 31, and citing Nebraska cases on pages 42, 43. Referring to the requirements of this constitutional provision, Cooley's Constitutional Limitations (8th ed.) 295, says: "It may therefore be assumed as settled that the purpose of these provisions was: First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard, by petition or otherwise, if they shall so desire."

The words "relating to" in the title of the act suggest a reference to Webster's dictionary. There the intransitive verb "relate" is defined: "To stand in some relation; to have bearing or concern; to pertain; refer;—with *to.*"

The title to the act gave notice that the text of the bill related, pertained to, referred to and was concerned with the exercise of the power of eminent domain by the smaller cities of the state desiring to acquire public utility properties. All entitled to notice of the contents of the bill were presumed to know that such property could not be acquired by condemnation in the exercise of the power of eminent domain without paying for it. For the state Constitution says: "The property of no person shall be taken or damaged for public use without just compensation therefor." Const. art. I, sec. 21. If any city within the prescribed class had the money on hand with which to pay for a public utility property, it is safe to assume

that its voters would know it before voting to acquire such a property. If it had not the funds, they would scarcely be heard to say that they did not know that bonds would have to be issued to carry out their decision at the polls to exercise the power of condemnation and to comply with the mandate of the Constitution that the element of payment must accompany the act of taking over the ultimate title to the property condemned. Moreover, while the bill for the act was pending in the legislature, what member thereof, or what citizen, could truly say that the title of the act did not give him as full notice of the power to issue bonds, if necessary to pay for the property to be condemned, as of any other power contained in the act? We are of the opinion that the act was confined to the one subject of the exercise of the power of eminent domain in acquiring public utility property; that the text of the act was germane to the title thereof; that it contained only one subject, and that the act is not violative of the constitutional provision heretofore discussed.

Section 1, art. II of the Nebraska Constitution creates the legislative, executive and judicial departments, and prohibits each from exercising any power belonging to another except as expressly directed or permitted. Section 1, art. V, vests the judicial power of the state in a supreme court, district courts, county courts, justices of the peace, "and such other courts inferior to the supreme court as may be created by law." Section 2, art. V, gives the supreme court jurisdiction in all cases relating to the revenue, civil cases in which the state is a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as may be provided by law.

It has frequently been held by this court that the constitutional grant of original jurisdiction in judicial matters limits the original jurisdiction of this court to the matters enumerated in the Constitution. So the company further objects on the ground that the Constitution so limits the jurisdiction of this court that it cannot be vested by the legislature with any power, either execu-

tive, legislative, or judicial, and hence has no power to make the appointment. In this respect it is asserted that the statute authorizing the appointment undertakes to give this court administrative or executive duties forbidden by the Constitution. And it is claimed that the statute in question undertakes to create a court (meaning the "court of condemnation") in contravention of the Constitution.

In *State v. Neble,* 82 Neb. 267, there was involved the question of the right of district judges to appoint park commissioners for metropolitan cities in pursuance of a statute seeking to confer that duty upon them. This court, in an opinion by Judge Reese, found that the park commissioners performed no judicial function or duties, but that their duties are wholly executive and administrative. It was accordingly held that the part of the section providing for the appointment of the commissioners by district judges was unconstitutional and void.

A case, very similar to the instant one, involving the appointment by this court of three district judges as a "court of condemnation," was before this court in 1918. *In re Appraisement of Omaha Gas Plant,* 102 Neb. 782. It was there held that the ascertainment by appraisers of the amount of damages to be awarded to one whose property had been taken or damaged for public use, in the exercise of eminent domain, is a function judicial in its nature; that the board of appraisers provided for by the statute, though termed a "court of condemnation," does not constitute a court under the Constitution and laws of this state, although such board exercises functions judicial in their nature; that the appointment by this court, under the statute referred to, pertains to a judicial proceeding and is within the power of the legislature to provide for; and that it was competent for the legislature to select the district judges of the state as a class from which appraisers might be chosen, as men of judicial training and experience are no doubt well qualified for such duties. In the course of the argument, Judge Letton, who wrote the opinion, said:

"It is pointed out in *State v. Neble,* 82 Neb. 267: 'Many executive or administrative acts performed by judicial officers, and many judicial acts performed by ministerial officers, are and must be held valid. * * * The appointment of an officer might properly, we think, be classed as the exercise of an executive or administrative function, at least not judicial. Yet courts and judges frequently find ·it necessary to make such appointments in order that the judicial functions of the courts may be freely exercised. It often happens that the courts or judges are clothed with this appointing power where the appointee may not be required to discharge any duty which could be in any way ancillary to the exercise of the judicial functions of the court or judge making the appointment, and yet the validity of the appointment could not be successfully questioned, for the reason that the person appointed would exercise judicial functions in the discharge of the duties imposed under the appointment.' "

In discussing a very similar statute, and holding it to be valid, the supreme court of Iowa, in *Hutchins v. City of Des Moines,* 176 Ia. 189, said: "The proceedings are initiated by the resolution of the city council, and, upon the presentation of a certified copy thereof to the supreme court, that body is authorized to designate the district judges who are to constitute the court of condemnation, established for a single specified purpose. The tribunal is of legislative creation. The court merely designates who shall constitute it. In so doing, no one is appointed to office, but officers are assigned to the performance of certain duties. As members of the court of condemnation, they do not cease to be the judges of the district court. * * * In the case at bar, this court was not called upon to appoint any one to office, judicial or otherwise, but merely to assign three judges to the performance of certain judicial duties. As these were to be performed by judges of the nisi prius courts, it was particularly appropriate that their selection be left to the judges of this court, or rather, to the court, which is practically the same thing."

It was said in the opinion *In re Appraisement of Omaha Gas Plant,* 102 Neb. 782: "The benefit of the doubt in such cases must always be given to the legislature, and it is our duty to uphold the law, unless it is clearly void." Not only is that principle as strong here as it was there, but it is reinforced by the precedent there established with all its implications. In the circumstances we hold that the so-called "court of condemnation" does not constitute a court under the Constitution and laws of this state, that it was competent under the Constitution for the legislature to designate the district judges of the state as a class from which appraisers should be chosen, and that it was competent for the legislature to authorize this court to designate the district judges to act as such appraisers.

The company objects on the ground that the act violates that part of section 6, art. I of the Constitution, which says: "The right of trial by jury shall remain inviolate."

"This is a constitutional guaranty that the right of trial by jury shall remain as it did prior to the adoption of the Constitution of 1875. Without going into a history of this provision it is sufficient to say that at the time of the adoption of the present Constitution the right of trial by jury was guaranteed by the Constitution of the state to its citizens substantially as the right existed at common law." *Kuhl v. Pierce County,* 44 Neb. 584. See, also, *Sharmer v. McIntosh,* 43 Neb. 509; *Yager v. Exchange Nat. Bank of Hastings,* 52 Neb. 321; *Mayer v. State,* 52 Neb. 764; *Krumm v. Pillard,* 104 Neb. 335.

In its discussion of eminent domain, 20 C. J. 999, says: "In the absence of a special constitutional or statutory provision there is no right to trial by jury in condemnation proceedings. Due process of law does not require the damages in such proceedings to be assessed by a jury, but a jury trial is frequently provided for by special constitutional or statutory provisions." 10 R. C. L. 187, sec. 161, is to the same general effect. "What the tribunal shall be which is to assess the compensation must be

determined either by the Constitution or by the statute which provides for the appropriation." Cooley's Constitutional Limitations (8th ed.) 1207. Cases might be cited in great numbers in illustration of this rule. The act is not invalidated by its failure to provide a jury trial to assess damages.

It is further objected that the act is a special act "regulating the practice of courts of justice" prohibited by the seventh interdiction of section 18, art. III of the Constitution. The objector's specification indicates that this is based upon section 4 of the act, which provides that, upon appeal to the district court, the appeal shall be tried and determined upon the pleadings, proceedings and evidence embraced in the "transcript of the proceedings before such condemnation court including the evidence taken before it certified by the clerk, reporter and judges of such court." Laws 1919, ch. 188, sec. 4. It is asserted that this statute and the statute considered in the *Omaha Gas Plant* case are the only two instances in eminent domain statutes where the interested parties are not entitled to present and examine their witnesses in court on the appeal from the appraisal. Assuming this to be true, nevertheless it answers the constitutional objection if the legislature has made a reasonable classification and if the statute operates generally and uniformly upon all objects and persons of a class so constituted. *Livingston Loan & Building Ass'n v. Drummond,* 49 Neb. 200, and cases cited; *Cleland v. Anderson,* 66 Neb. 252, and cases cited; *Dougherty v. Kubat,* 67 Neb. 269. Classification of cities according to population has long been recognized in this and other states. The law under consideration operates uniformly upon all of the cities coming under it. As others may enter the classes they will be subject to it. Owners of public utility properties in such cities are generally and uniformly subject to it. The type of appraisers selected, the more than ordinary complication in condemnation matters, the practice of taking the evidence of experts as to value before such a board, more capable of passing upon evidence than ordinary appraisers,—

these considerations unite in suggesting that the legislature made a valid classification in the first instance. They provided a forum where the evidence of value could be adduced by both parties and preserved. The procedure on appeal, where the district court hears the case upon the evidence produced before the appraisers and duly certified for the purposes of appeal, is a proper method prescribed for the judicial determination of the value of property being condemned in this class of cases. We are of the opinion the act does not conflict with the Constitution as to being a special act regulating the practice of courts of justice.

It is further objected that the statute authorizing the apportioning of the costs between the owner of the plant and the city, and requiring of the owner a cost bond and payment for his transcript as a condition of exercising the right of appeal, violates the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States.

It will be noted that the statute (Comp. St. 1929, sec. 19-706) merely gives the court of condemnation "power to apportion the cost made before it." It is fundamental that the owner is entitled to just compensation for his property condemned in the exercise of the power of eminent domain, and ordinarily that may not be so diminished by the assessment of costs as to deprive him of the fund to which he is constitutionally entitled. It is conceivable, however, that the owner might, on the appraisement hearing, so conduct himself as to warrant the taxing or apportionment of certain costs against him. However, on appeal or review, these costs would be subject to retaxation. If the appraisement tribunal unlawfully assessed a part of the costs against the owner, the district court would, under the same statute, assess all of the costs against the city. We are of the opinion that this secures equal protection and does not violate the federal Constitution as to due process.

As to objection to the requirement of cost bond and transcript as a condition of appeal, this is novel. We

find nothing like it in our cases or statutes. In other condemnation matters these things seem to be required and have been complied with and no question raised. The general rule regulating appeals in eminent domain matters seems to be that, in the absence of a constitutional provision, the legislature may impose upon the exercise of the right of appeal such reasonable conditions as it sees fit. The owner will probably not find difficulty in providing a cost bond. If successful, the costs of the transcript will be subject to his request for favorable taxation. We are of the opinion that the requirements are fair and not unduly restrictive. They are not violative of the provision of the federal Constitution.

The district judges heretofore appointed will be furnished with a proper order as to the time to attend, organize and proceed with their duties in the premises.

OBJECTIONS OVERRULED.

ROSE, J., dissenting.

I am firm in the conviction that the legislature was without power to direct the supreme court to appoint a court of condemnation to ascertain the value of the privately owned electric light and power plant at the city of Mitchell for the purpose of municipal proceedings to acquire ownership thereof by condemnation. The supreme court had no authority to make the appointment. Both the act of the legislature and the judicial order of appointment were void as violations of the Constitution, which provides:

"The supreme court shall have jurisdiction in all cases relating to the revenue, civil cases in which the state is a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as may be provided by law." Const. art. V, sec. 2.

The jurisdictional powers thus enumerated excluded all others. The necessity for those limitations on power has been demonstrated by legislative usurpations. The jurisdiction of the supreme court is appellate and original. The appellate jurisdiction may be enlarged by statute, but the original jurisdiction is limited by the Constitution

to "cases relating to the revenue, civil cases in which the state is a party, mandamus, quo warranto, habeas corpus." What the legislature attempted to require the supreme court to do was not to exercise appellate power. There was no appeal herein from any inferior court or other tribunal. This proceeding was an original one in the supreme court and was docketed by the clerk thereof. Adverse litigants appeared by counsel at the bar and presented diverse views of the law in an original proceeding outside of those enumerated in the Constitution. It was not a case relating to the revenue, to a civil case in which the state is a party, mandamus, quo warranto, or habeas corpus. The legislative act did not authorize the appointment of an officer of the supreme court. By virtue of a certificate showing that the city of Mitchell voted to acquire the privately owned electric light and power plant there, the legislature attempted to give directions as follows: "The supreme court shall within thirty days after the receipt of such certificate, appoint three district judges from three of the judicial districts of the state, and said three judges shall constitute a court of condemnation for the ascertainment, and finding of the value of any such plant, works, or system, and the said supreme court shall enter an order requiring such judges to attend as a court of condemnation at the county seat in which such city is located." Comp. St. 1929, sec. 19-702.

This is a specific command to the supreme court, as such, to make a judicial appointment and to enter a judicial order,—both outside of either appellate or original jurisdiction.

It has often been held that the enumeration of jurisdictional powers in the section of the Constitution, hereinbefore quoted, excludes all powers not so enumerated. In a unanimous opinion, never since changed, the rule of general application was stated as follows:

"It is not within the power of the legislature to confer upon this court original jurisdiction over subjects not enumerated in the Constitution." *State v. Hall*, 47 Neb.

579. See, also, to the same effect *Miller v. Wheeler,* 33 Neb. 765; *Bell v. Templin,* 26 Neb. 249; *Edney v. Baum,* 70 Neb. 159; *Larson v. Wegner,* 120 Neb. 449.

It follows, as already stated, that power to appoint a court of condemnation is not within the appellate jurisdiction of the supreme court and is not within its original jurisdiction, because the proceeding herein is not an appeal, or a case relating to the revenue, a civil case in which the state is a party, mandamus, quo warranto, or habeas corpus.

Neither expediency nor convenience justifies a legislative act or a judicial order beyond the boundary of power fixed by the Constitution. Without the makeshifts of supreme court commissions and the calling of district judges, the supreme court has been unable to perform all the duties arising within its appellate and original jurisdictions.

Litigants invoking rights protected by the Constitution should not be required to stand aside, while others beyond the boundary of judicial power engage the attention and time of the supreme court. The legislature should not be permitted to thus disturb the proper course of judicial proceedings, and the supreme court should not acquiesce in the usurpation, however laudable the legislative aim or the judicial purpose may be.