Davidson vs. Houston, Tax Collector.

No. 8769.

HENRIETTA DAVIDSON VS. J. D. HOUSTON, TAX COLLECTOR.

The power granted by Art. 154 of the Constitution to the legislature, to prescribe that judicial advertisements in certain designated cities and parishes shall be made "in the French as well as in the English language," passed to the legislature untrammelled by the restrictions contained in Art. 48, relative to *local* or *special* laws.

Act 38 of 1880 is, therefore, not unconstitutional because of non-compliance with the requirements of Art. 48 of the Constitution.

The decision of the District Court, as to the extent to which warrants, baby bonds and school certificates may be used in the payment of State taxes due prior to 1879, is strictly correct.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*B. R. Forman* for Plaintiff and Appellee.

*Blanc & Butler* for Defendant and Appellant.

*H. L. Dufour* and *Carleton Hunt* for the "New Orleans Bee," Intervenor.

*Albert Voorhies*, as *Amicus curiæ*.

The opinion of the Court was delivered by

FENNER, J. The plaintiff sues to enjoin the sale of her property for State taxes of 1878 on two grounds, which will be considered separately.

I.

The first ground is, that the sale is advertised in English only, and not in French, as required by Act No. 38 of 1880.

The defendant maintains the right to advertise in English only, and asserts the unconstitutionality of Act No. 38 of 1880, on the ground that it is a "local or special law," not passed in conformity with the requirements of Art. 48 of the Constitution of 1879.

The constitutionality of the Act is maintained on two grounds, viz: 1st, that the Act, even if *local* or *special*, is removed from the operation of Art. 48 by the express authority granted in Art. 154 of the Constitution; 2d, that it is not a *local* or *special* law, within the intendment of the Constitution.

Art. 46 of the Constitution prohibited absolutely the passage of local or special laws upon certain enumerated subjects.

Art. 48 provided, that "no local or special law shall be passed on any subject not enumerated in Art. 46, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into

the General Assembly of such bill, and in the same manner required by law for the advertisement of judicial sales."

Art. 154 declares : " The laws, public records, and the judicial and legislative written proceedings of the State shall be promulgated, preserved and conducted in the English language ; but the General Assembly may provide for the publication of the laws in the French language and prescribe that judicial advertisements in certain designated cities and parishes shall also be made in that language."

At the first session of the legislature, called under the Constitution, the Governor of the State, who had been the president of the constitutional convention, called attention to Art. 154 in his message, saying : "Art. 154 provides that the General Assembly may determine whether the laws are to be published in the French language and may prescribe the manner of such publication. The same Article enables the General Assembly to direct the publication of judicial advertisements in that language in certain designated cities and parishes. In portions of the State the French language is employed to so great an extent as to render the publication of laws and judicial advertisements in English only a constant and annoying inconvenience."

Upon these suggestions, the Assembly passed Act 38, which is entitled : " An Act to regulate the judicial advertisements in the French language, in the parish of Orleans, *under the provisions of Article* 154 *of the Constitution.*"

Obviously, the executive and legislative departments were of opinion that the power expressly granted by Art. 154 passed to the legislature, untrammelled by the restrictive requirements of Art. 48.

We may not reverse this conclusion unless, in the language of Chief Justice Marshall, " the opposition between the Constitution and the law should be such that the Judge feels a clear and strong conviction of their incompatibility with each other." Fletcher vs. Peck, 6 Cr. 87.

The language of another eminent Judge is also aptly quoted by counsel: " Before the Court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt." Ex parte Colburn, 1 Cowen, 574.

. We have bestowed the greater reflection on this question, from the respect which we entertain for the learned District Judge who, in a characteristically able opinion, has pronounced the Act unconstitutional. We have not been able to reach the same conclusion.

It seems to us that the power expressly conferred by Art. 154, " to prescribe that judicial advertisements in certain designated cities and parishes shall be made in the French language," had effect to take that subject out of the operation of Article 48. The power was granted in evident appreciation of the fact, suggested in the subsequent mes-

sage of the Governor, that in some portions of the State the French language is employed to so great an extent, that publication in English only might operate inconvenience and injustice. To enable the legislature to take cognizance of these exceptional cases and to obviate such inconvenience or injustice, this power was conferred. It was a legitimate subject of legislative consideration to determine whether legislation of this character was required in the public interest; and having reached the conclusion that it was so required, the exercise of the power became as much a *duty* as if it had been positively commanded by the Constitution. It is impossible to suppose that the power to perform such duty should remain paralyzed until some private person at his own expense, should see fit to prepare and publish for thirty days a notice stating "the substance of the contemplated law." Even if some individual should conclude to act in the premises, *non constat* that the *substance* of the law *contemplated* by him would meet the legislative idea of the proper law required; and thus a power expressly granted, on motives of public policy, and without express subjection to the provisions of Art. 48, might be indefinitely held in suspense, however essential to the public weal the legislature might consider its exercise.

As before stated, we consider that when the legislature concluded that the public interest required the exercise of the power so expressly granted, its exercise became as much a duty as if it had been expressly commanded by the Constitution; and the language employed by us in a former case becomes strictly applicable: "It was the duty of the General Assembly to adopt such legislation, and it could find no excuse for the non-performance of this duty in the fact that nobody had seen fit to give the notice required by Article 48." Taxpayers vs. City, 33 An. 568.

These views are powerfully fortified by the consideration that, had the mandate of the first phrase of Art. 154 stood alone, without the succeeding ones, the power of the legislature to prescribe the publication of judicial advertisements in French, in designated cities and parishes, on compliance (conceding such legislation to be *local* or *special*,) with the requirements of Art. 48, would hardly be questionable. To hold, therefore, that the subsequent express grant of such power was subject to the same restriction, would stamp that grant as pure surplusage, a result which sound principles of interpretation always forbid.

These views are sufficient to sustain the constitutionality of Act 38, and render it unnecessary to determine whether it is a *local* or *special* law within the intendment of the Constitution.

## II.

So far as the second ground is concerned, we cannot dispose of it more satisfactorily than in the language (slightly condensed) of the District Judge :

" The next question to be determined is, what obligations are receivable for the taxes of 1878, and are such obligations receivable for the interest due on such taxes?

" The constitutional ordinance for the relief of delinquent taxpayers contains the following provisions :

" 1. It remits all interest, costs and penalties, fees and charges upon taxes due prior to January 1st, 1879, on condition that said taxes should be paid before January 1, 1881, with 8 per cent. interest from January 1, 1880 ; and further provides that, in case of the non-payment of such taxes before January 1st, 1881, the said interest, costs, penalties, etc., should be revived.

" 2. That the taxes in question, with exception of the portion due to the *interest* and *levee* funds, should be payable in warrants of a certain character, or in certain *baby* bonds or certificates into which the warrants mentioned were convertible.

" 3. That proportion of the taxes due to the *interest* and *levee* funds is made payable in matured interest coupons of State bonds and warrants of the Levee Company respectively.

" 4. Certain provisions of the ordinance apparently contemplate the retirement of the *baby* bonds and certificates above referred to.

" Act 126 of 1880 provided, that certain certificates therein described and known as ' school certificates,' shall be received for the taxes of 1879; and that when the baby bonds and certificates provided for by constitutional ordinance shall have been retired or provided for, the said school certificates should be ' receivable for all taxes and licenses due the State prior to 1879, and for *all interest*, penalties, costs, fees and charges thereon, except taxes due the interest and levee funds.'

" By Act 98 of 1882, (Sec. 15) all penalties attached to the taxes due prior to 1879 are remitted, and, in lieu thereof, the taxpayer is required to pay 8 per cent. interest upon such taxes from the date when they fell due.

" This Act requires the tax collector to proceed with the seizure and sale of property, and provides that it may be sold for any of the warrants, bonds, or other obligations which, under the Constitution and laws, are made receivable for taxes, provided, however, that the cost for making the sales and the commission of the collector are required to be paid in cash.   (Sec. 5.)

" Under this legislation the taxes due by plaintiff have attached to them, as penalties, interest at 8 per cent. from the date when they

became due, and such costs as may have been legally incurred in seizing and advertising the property for sale.

"These costs are payable in *cash*. City vs. Jackson, 33 An, 1088.

"The whole *interest* on *all* the taxes, as well as all the principal, except the interest and levee tax, are payable, either in the warrants or bonds provided for by the constitutional ordinance, or, (since it is admitted that the baby bonds and certificates referred to in that ordinance have been retired or provided for) in the certificates contemplated by Act 126 of 1882."

These views of the District Judge seem to us irrefutable, and the objections of the defendant thereto untenable. They are:

1st. That the taxes of 1878 were not *due* prior to January 1st, 1879, and, therefore, that the constitutional ordinance and Act 98 of 1882 have no application to them. In view of Sections 52 and 97 of Act 96 of 1877, we do not see how this contention can be supported.

2d. That the interest is payable in the same manner as the tax on which it accrues, and, therefore, that the interest on levee and interest taxes must be paid in cash. However forcible this claim might be on general principles, it must yield to the express terms, heretofore quoted, of the Act 126 of 1880.

The prayer of appellee for amendment of the judgment must, in some respects, be allowed.

It is, therefore, ordered, adjudged and decreed that so much of the judgment appealed from as condemns plaintiff to pay the costs of advertising in English only, and decides that advertisement in French is not legally necessary, be avoided and reversed; and that, as so amended, said judgment be affirmed at costs of appellant in both Courts.

Manning, J., concurs in the decree.

Rehearing refused.