McBRIDE, Judge."
This • is a suit brought by the City of New Orleans, through its mayor and commission council, against all of the State representatives and senators in the Louisiana Legislature elected from the various wards and senatorial districts in the City of New Orleans, and the Superintendent of Police of the City of New Orleans. Plaintiff seeks a declaratory judgment declaring and decreeing that Act No. 94 of 1950, LSA-RS 15:574.15, 15:574.16, is unconstitutional, null, and void, and. further declaring that the defendant members of the State Senate or House of Representatives have no right as members of the Legislature to exercise any parole power or to parole any persons under arrest and detained for a violation of the ordinances of the City of New Orleans. It is further prayed that the judgment also declare that the Superintendent of Police of the City of New Orleans is under no obligation or duty to honor any demand emanating from the other defendants to parole persons because requested to do so by them. An injunction was also prayed for enjoining and restraining the defendant members of the State Senate or House of Representatives from exercising such parole powers, and enjoining and restraining the Superintendent of Police of the City of New Orleans and his subordinates from honoring requests from any of the other defendants for paroles. The usual rule nisi was issued commanding the defendants to show cause why a preliminary injunction should not issue against them as prayed for.
Whereas it is alleged that Act No. 94 of 1950 is unconstitutional, Bolivar E. Kemp, Jr., Attorney General of the State of Louisiana, was also served with a copy of the proceeding, pursuant to the provisions of LSA-RS 13:4241.
The two pertinent sections of the act under attack read as follows :
“Section 1. Be it enacted by the Legislature of .Louisiana that, from and after the passage of this Act, every elected officer of the State of Louisiana, or of any parish in the State of Louisiana, or of any municipality.of any'parish in the State of Louisiana, 'shall have the power to parole any person or persons who are under arrest and detention for the violation of any criminal or quasi criminal ordinance of any municipality in any parish of the State of Louisiana, ■ within the territorial jurisdiction of said State or Parish elected officer, and within said municipality wherein said municipal officer exercises his jurisdiction, whenever any such municipality has a population of more than 250,000 inhabitants according to the census of the United States for the year 1940 or any subsequent year; , Any such officer shall be and is hereby empowered to notify the municipal authorities of any such municipality that he desires that any such person or persons so charged and detained shall be paroled pending trial on the [recognizance] of such person or persons so charged. Such officer may convey said desire to the municipal authorities of such municipalities orally or otherwise.
“Section 2. Should any officer of any such municipality described above refuse to parole any such person or persons upon the verbal request, or otherwise, of any such officer herein mentioned, such officer of the municipality shall upon conviction before the Criminal District Court of such parish be condemned to pay a fine of not less than $100.00, nor more than $1,000.00, or suffer imprisonment of not less than thirty (30) days, nor more than six months, or both, as the Judge of said Criminal District Court of said Parish shall deem expedient.”
The City of New Orleans alleges that since the effective date of the act the defendant members of the Louisiana Legislature, acting in their respective capacities, have on numerous occasions exercised or attempted to exercise the right purportedly conferred upon them by Act No. 94 of 1950, by paroling persons arrested and de* *731 tained for violations of various criminal ordinances of the City of New Orleans. The petition further recites ■ that because of the severe penalties provided in § 2, the police officers of the City of New Orleans who are under control of the defendant Superintendent of Police of New Orleans will not assume the risk of refusing to obey the provisions of the act, and that the police officers will continue to obey the provisions of the act, and upon the demand ■of any of the said senators or representatives will parole any and all persons so arrested and detained.
It is averred that because of the widespread and indiscriminate right of parole without bond granted by the act to said senators and representatives, who are in no wise responsible for the administration and enforcement of the ordinances of the City of New Orleans, it is impossible for the city or for its mayor and commission council to properly and efficiently perform their duties and to enforce ordinances of the city.
The petition specifically charges that Act No. 94 of 1950, in various and enumerated respects, is unconstitutional, null, and void; that despite the manifest unconstitutionality of the act the police officials feel constrained to follow and obey its provisions, unless a declaratory judgment is rendered decreeing the unconstitutionality of the act and declaring that the defendant senators and representatives have no lawful right of parole, and further declaring that the Superintendent of Police of New Orleans and the police officers under his.control and supervision have neither the right nor are under the obligation of complying with any request for paroles emanating from the members of the State Legislature.
It is further alleged that the city and its mayor have no adequate remedy at law and will suffer irreparable injury, unless an injunction is issued enjoining and restraining the defendants who are members of the Legislature from exercising or attempting to exercise the rights which the act purports to grant to them, and enjoining and restraining the .Superintendent of Police, and the police officers under him, from honoring a parole'order from any of the members of the Legislature.
In addition to the declaratory judgment, a writ of injunction is prayed for. ,
The usual rule nisi was issued, and when the rule was called for trial, thirteen of the defendants appeared in proper person, while thirteen others were absent and unrepresented. One of those present stated to the court that he wished to have the record show that he would not defend the suit.
. The Superintendent of Police made no appearance, but the court was informed by the City Attorney that he was authorized to say that the Superintendent of Police would submit the matter to the court and abide by any judgment rendered.
The Attorney General and Assistant Attorney General, Michael E. Culligan, filed exceptions of no cause or right of action, and with reservation of all rights thereunder answered the suit.
After a hearing of the exceptions, the matter was submitted on the face of the pleadings .for decision on the exceptions and on the prayer for a preliminary injunction and declaratory judgment.
After considering the matter for several days, the trial judge sua sponte first held that he had no jurisdiction ratione materiae, on the theory that a court of civil jurisdiction has ho authority to pass upon the constitutionality of a penal statute, or to enjoin the enforcement thereof.
Therefore, the primary question to be solved is whether the Civil District Court for the Parish of Orleans had jurisdiction, and we now address our attention to that feature of the case.
 We cannot agree with our learned brother below that no jurisdiction vested in him. True, § 2 of Act No. 94 of 1950 provides severe penalties against any- officer of any municipality who shall refuse to parole any person upon the request of an elected official endowed with the power to parole under the provisions of the act. However, the mere fact of the presence of § 2 does not inhibit the Civil District Court for the Parish of Orleans from adjudicat *732 ing the case. Although a statute or an ordinance contains penal provisions for violations of the terms thereof, a .civil court is not necessarily divested of authority to enjoin the enforcement or test the constitutionality of the enactment. There are many laws, purely civil in their nature, which provide for penalties, e. g., the income tax law, the zoning law, and the various acts regulating the pursuit of trades, occupations, and businesses, and the licensing of persons engaging therein. The test is, if the statute complained of is injurious to property interests or civil rights, one affected may enjoin its enforcement. See City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A.L.R. 1136.
It is forceably alleged that the widespread and indiscriminate right of parole without bond, granted to certain elected officials by the act, interferes with the proper administration of the city’s affairs and prevents the mayor and commission council from properly and efficiently performing their duties and enforcing local ordinances. The only apparent remedy of the City of New Orleans, which undoubtedly is vitally affected by the provisions of the act, is to enjoin the enforcement and test the constitutionality of the act, and the only tribunal before which appropriate relief could be obtained would be the Civil District Court for the Parish of Orleans. Otherwise, the city would have to await a violation of the statute by one of its officers before the issue could be raised, and then only in the criminal court having jurisdiction of the offense.
Notwithstanding the trial judge’s holding that he had no jurisdiction ratione materise, his reasons for judgment recite: “But, if the court be in error as to jurisdiction, the court will now proceed to pass upon the points raised by counsel in this cause.”
The judge then proceeded to pass upon the exceptions of no cause or right,of action, which he maintained, and rendered judgment dismissing the suit and recalling the rule nisi for the preliminary injunction.
The City of New Orleans appealed. When the matter was called for argument before us, two of the defendant members of the Legislature appeared and interposed exceptions of no cause or right of action to plaintiff’s demands.
The exceptions are grounded on the theory that Act No. 94 of 1950 is constitutional in all respects and does not abridge or contravene any of the provisions of the Constitution of 1921, and that plaintiff cannot be granted the relief sought.
The City of New Orleans contends that the act is a local or special law contravening §§ 4, 5, and' 6 of Art. IV, of the Constitution of 1921.
The first of those sections provides that the Legislature shall not pass any local or special law on certain specified subjects, among which are listed the following:' "
“Regulating the practice or jurisdiction of any court, * * *.
* * * * * ■ *
“Concerning any civil or criminal actions.
* * ⅛ * * * ,
“Granting to any corporation, association, or individual any special or exclusive right, privilege or immunity.”
None of the above subjects are embraced within the context of the act. The act neither regulates the practice or jurisdiction of any court, nor concerns any civil or criminal actions, nor grants any exclusive right, privilege or immunity. The city attorney has cited the case of State ex rel. Dowling v. Ray, 150 La. 1030, 91 So. 443, wherein the Supreme Court was concerned with the question whether a judge of the Criminal District Court for the Parish of Orleans had the right to parole persons arrested and incarcerated by the police of the City of New Orleans for violating certain ordinances. The cited case is in nowise pertinent to the matter under discussion, as the Court therein merely held that under the provisions of Act No. 71 of 1918 the recorders of the City of New Orleans, who had original jurisdiction in prosecutions for violations of city ordinances, were invested with the power to release on bail or parole those under arrest for such violations, and that by the terms of the act such powers were not conferred *733 upon the judges of the Criminal District Court.
Insofar as § 5 of Art. IV of the Constitution is concerned, the Legislature is forbidden to enact special or local laws by the partial repeal of a general law, and it has not been made clear to us by the city attorney in what feature Act No. 94 of 1950 comes within the limitation placed on the Legislature by that section.
The city maintains that no prior notice of intention was given in accordance with § 6 of Art. IV, which provides that no local or special law shall be passed, not enumerated in § 4, unless notice of the intention to apply for its passage was published in the locality to be affected, at least thirty days prior to its introduction, the act to contain a recital that such notice was published. The act contains no such recital, and it must be assumed, therefore, that'no such notice was published.
In attempting to place the act in the category of such a local or special law as requires prior notice of intention, the city attorney argues that at the time the act was adopted the City of New Orleans was the only municipality within the State having a population of more than 250,000 inhabitants, and that by a mere play of words the Legislature^ passed in effect what is clearly a local or special act, without the required prior notice of intention. In support of that position, the city cites and heavily relies upon the case of Federal Land Bank v. Nix, 166 La. 566, 117 So. 720, 722, in which the Supreme Court was called upon to determine whether Act No. 76 of 1910, which authorizes municipalities of more than 100,-000 inhabitants to adopt ordinances regulating the construction and removal of buildings, was a special or local law within the meaning of a similar provision of the Constitution of 1898. The Court found that the provision that the statute was only to apply to municipalities of more than 100,000 inhabitants plainly indicated that the operation and effect of the law would be confined solely to the City of New Orleans, since that city was the only municipality in the State which had a population anywhere near that number of inhabitants, and held that the statute was local or special in character. But, said the Court: “ * * * it does not follow that, because the statute is in reality a local one, and because notice of the intention to introduce it was not published, the statute must be declared unconstitutional. * * * ”
Undoubtedly Act No. 94 of 1950 is a local law, because it cannot be denied that the City of New Orleans is the only municipality in Louisiana which has more than 250,000 inhabitants, but where the terms of a law are applicable to a locality in general, and not to particular persons or interests, under the well .established jurisprudence of our Supreme Court, the notice of prior intention required by § 6 of Art. IV of the Constitution is unnecessary, and the act nonetheless has full force and effect. Act No. 94 of 1950 is general in its application, and does not attempt to confer private .advantage or advancement on any private persons or property.
The precise situation has been presented to the Supreme Court for determination on several occasions.' The latest expression on the subject is to be found in the very recent case of State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778, 783, wherein it was said: “The fact that the deputies are paid by the City of New Orleans is of no moment in determining whether a law passed for the purpose of fixing their salaries is a local or special law. The words ‘local’ or ‘special’ law as used in Section 6 of Article IV of the Constitution have been declared in numerous cases to refer to such laws wherein private individuals are seeking some private advantage or advancement for the benefit of private persons or property within a certain locality. See State v. Dalon, 35 La.Ann. 1141, 1142; Williams v. Guerre, 182 La. 745, 162 So. 609; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 and State v. Cusimano, 187 La. 269, 174 So. 352.”
In State v. Cusimano, 187 La. 269, 174 So. 352, 354, as against the contention that an act which levied an additional license tax on all persons, firms, and corporations engaged in the Parish of Orleans in the business of selling, etc., liquor, was a local and special statute requiring prior notice of intention, the Court said: “Publication of *734 notice of intention to apply for the passage of the statue was unnecessary. The intention to apply alluded to in the constitutional provision means only that of private individuals seeking some private advantage or advancement for'the benefit of private persons or property within a certain locality. Davidson v. Houston, 35 La.Ann. 492; State v. Dalon, 35 La.Ann. 1141, 1142; Excelsior Planting & Mfg. Co. v. Green, 39 La.Ann. 455, 1 So. 873.”
In light of this well established jurisprudence, it hardly can he said that pri- or notice of intention should have been given in accordance with § 6 of Art. IV of the Constitution of 1921 before the passage of Act No. 94'of 1950.
The city also assails the act on the ground that it violates constitutional principles of the separation of powers of the three departments of government. Sections 1 and 2 of Art. II of the Constitution of 1921 respectively provide:
“§ 1. The powers of the government of the State of Louisiana shall be divided into three distinct departments — legislative, executive, and judicial.
“§ 2. No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise •power properly belonging to either of the others, except in the instances hereafter expressly directed or permitted.”
The city attorney contends that whereas the defendants, with the exception of the Superintendent of Police, are members of the Louisiana Legislature, the act, which seeks to confer upon them a judicial function, violates the constitutional admonition that the three departments of government shall be kept separate. The argument is advanced that the power of parole vests in the judiciary and does not belong to the legislative branch of the government.
The first ten words used in § 1, “The powers of the government of thei State of Louisiana”, make it manifest that §§ 1 and 2 of Art. II apply only to the government of the State of Louisiana. The constitutional provisions separating and distributing governmental powers do not address themselves to a municipality, to which they are clearly inapplicable.
To be found in 11 Am.Jur., Constitutional Law, § 181, p. 880, is the following expression: “The constitutional requirement with respect to the separation of the three departments of the government which exists in a state Constitution is generally held to refer to the state government and state officers, and not to the government of municipal corporations or their officers.” See footnote: Sarlls v. State, 201 Ind. 88, 166 N.E. 270, 67 A.L.R. 718; State ex rel. Simpson v. City of Mankato, 117 Minn. 458, 136 N.W. 264, 41 L.R.A.,N.S. 111; Barnes v. City of Kirksville, 266 Mo. 270, 180 S.W. 545, Ann.Cas.1917C, 1121; State ex rel. Thompson v. Neble, 82 Neb. 267, 117 N.W. 723, 19 L.R.A.,N.S. 578; City of Greenville v. Pridmore, 86 S.C. 442, 68 S.E. 636, 138 Am.St.Rep. 1058; Walker v. City of Spokane, 62 Wash. 312, 113 P. 775, Ann.Cas. 1912C, 994.
In 16 C.J.S., Constitutional Law, § 105, p. 295, the following is to be found: “The application of the 'distributive clause’ is confined mainly to the sphere of the central government; -it finds little observance in municipal corporations, or in other units of local government; thus, a commission form of government with blended powers may be established by statute unless otherwise prohibited by the constitution.” See footnote: Sarlls v. State, 201 Ind. 88, 166 N.E. 270, 67 A.L.R. 718.
In People ex rel. Attorney General v. Provines, 34 Cal. 520, the Court said:
“We understand the Constitution to have been formed for the purpose of establishing State Government; and we use the term ‘State Government’ in contradistinction to local, or to county and municipal governments. * * *
“The departments, therefore, of which it speaks, and in respect to which it provides that no person employed in one shall be employed in either of the other two, are Departments of the State Government, as expressly defined and limited in the Constitution; and its meaning is that no member of the Legislative Department, as there defined, shall at the same time be a member *735 of the Executive or' Judicial Departments, as there defined, and vice versa. * * *
“In short, the Third Article of the Constitution means that the powers of the State Government, not the local governments thereafter to be created by the Legislature, shall be divided into three departments, and that the members of one department shall have no part or lot in the management of the affairs of either of the other departments, ‘except in the cases hereinafter expressly directed or permitted.’ ”
Our Supreme Court, in State v. Coulon, 197 La. 1058, 3 So.2d 241, 243, said:
“While local subdivisions and boards created by the state may have some connection with one of the departments of the state government as defined by the Constitution, they are not ‘departments of state government’ within the intent and meaning of the act.
“The language of the Act shows that the Legislature intended to make a distinction between the ‘departments of government of the State’ and local political subdivisions of the state such as parishes and municipalities, boards, such as the school board; the reason for the distinction being, we think, that such local subdivisions and boards, instead of being departments of the state government as defined by the Constitution, are creatures of one of those departments of the state government, the Legislative Department.”
By no stretch of reasoning can it be logically held that the Legislature, in enacting the statute under attack, vested authority in any persons holding office in one department of the government tó exercise power properly belonging to either of the others.
The point is also made that Act No. 94 of 1950 violates Art. Ill, § 16 of the Constitution, which provides that every law enacted by the Legislature shall embrace but one object and shall have a title indicative of such object.
The title of the act reads thus: “To confer upon all elected officials of the State of Louisiana, of the Parishes of said State, and of the municipally elected officers of any municipality in any said parish, the power to parole- for violations or infractions of any municipal ordinance of a criminal or quasi criminal nature passed by any municipality- in any said parish when said municipality is of a population of more than 250,000 inhabitants as made to appear by the census of the United States for the year 1940, or for any subsequent yearand to provide for penalties for the violation of any of the provisions of this Act.”
The title, in our opinion, is comprehensive and in complete compliance with the , constitutional mandate. A title performs all of the functions required, when it shows the purpose of the law and contains sufficient language to indicate its outline as well as its terms. Dehon v. Lafourche Basin Levee Board, 110 La. 767, 34 So. 770.
Another ground of attack is that the act under' consideration violates Art. VII, § 51, of the Constitution, which authorizes the Legislaturé to vest in mayors or in other municipal officers, such jurisdiction over the violation of municipal ordinances as may be found necessary. It is apparent from a reading of this section that its provisions do not apply to the City of New Orleans.
Nor do we perceive any merit in the contention that the act impinges upon the jurisdiction or authority of the Municipal Court of New Orleans, which was created by § 94 of Art. VII, and its jurisdiction therein defined. The argument of the city attorney is based on the assumption that the power to parole persons arrested and detained for infractions of local ordinances is a function vested in the judges of the Municipal Court of New Orleans, which they alone can exercise. We have been cited to no authorities holding that the power of parole is inherent in the said judges. Act No. 11 of 1906, as amended by Act No. 71 of 1918, granted to the recorders of the City of New Orleans jurisdiction over persons arrested for violations of city ordinances, with the power and authority to immediate release on bail, or in their discretion parole or release said persons so arrested over whom they have jurisdiction as *736 aforesaid. The former act also recognized the right of the inspector of police of the City of New Orleans to release upon his own responsibility any prisoner at any time previous to his or her actual arraignment in open court. We are unaware of any constitutional limitation which prevented the Legislature from broadening the powers of parole and vesting the right of parole in other officials.
A municipal corporation is but a creature of the sovereign state from whom it and its officials derive their powers large or small, and the Legislature can, from time to time, as that convenience may require, add to or abridge the powers and duties of the corporation, except so far as guaranteed by the Constitution. The' statute in question in no manner, shape, or form interferes with or alters the jurisdiction of the Municipal Court of New Orleans, as that court still retains its full constitutional authority to hear and determine cases arising out of violations of city ordinances.
The last ground of attack, i. e., that the statute is repugnant to the'Home Rule Amendment to Art. XIV, § 22, which was ratified by the voters of the State of Louisiana at the election of November 7, 1950, is so hollow that no discussion thereof is necessary. The amendment, in part, reads thus: “The Legislature is hereby prohibited, subsequent to the Regular Session of 1950, from amending, modifying or repealing the herein established or future hojne rule charters of the City of New Orleans other than by general law which uniformly applies, both in terms and in effect, to all cities of the State. * * *” (Italics ours.)
It is now, therefore, declared that Act No. 94 of 1950 is riot violative of the Constitution of the State of Louisiana on any of the several grounds urged, and accordingly it is ordered, adjudged, and decreed that the exception of no cause of action herein filed by Bolivar E. Kemp, Jr., Attorney General of the State of Louisiana, and by defendants John O’Connor and Nicholas G. Carbajal, be and the same is hereby maintained; the rule nisi for a preliminary injunction is recalled, avoided, and set aside, and plaintiff’s suit is -dismissed at its cost; and as thus amended the judgment is affirmed.
- Amended and affirmed.