Dear Mr. Ponder:
This office is in receipt of your opinion request under letter dated February 13, 1993. The request has been assigned to me for review.
Your request concerns the powers of the President Pro-Tempore of the East Baton Rouge Parish Metropolitan Council during the Mayor-President's absence. Specifically, we have been asked to address the following issues:
 (1) During a period in which the President Pro-Tempore is acting as Mayor-President, may the President Pro-Tempore preside over a Council meeting and vote on all Council agenda items?
 (2) Does Section 2.05 of the Plan of Government prohibit the President Pro-Tempore from receiving compensation for her President Pro-Tempore duties when she is acting as Mayor-President?
 (3) Does Section 2.10 of the Plan of Government prohibit a Council member from voting for herself or himself for President Pro-Tempore?
We first address a state constitutional question related in this matter. It has been suggested that the separation of powers clause within our state constitution might be pertinent. LSA-Const. Art. II, § 1 and § 2 provide:
 Section 1. The powers of government of this state are divided into three separate branches: legislative, executive, and judicial.
 Section 2. Except as otherwise provided by this constitution, not one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
The jurisprudence interpreting this constitutional provision states the separation of powers clause applies solely to the state and not the municipality. Pertinent language in the case of City of New Orleans v. Borey, 52 So.2d 728 (La.App. 1951) provides:
 "The first ten words used in § 1, `The powers of the government of the State of Louisiana', make it manifest that §§ 1 and 2 of Art. II apply only to the government of the State of Louisiana. The constitutional provisions separating and distributing governmental powers do not address themselves to a municipality, to which they are clearly inapplicable. . . . The constitutional requirement with respect to the separation of the three departments of the government which exists in a state Constitution is generally held to refer to the state government and state officers, and not to the government of municipal corporations or their officers. . . . The application of the distributive clause is confined mainly to the sphere of the central government; it finds little observance in municipal corporations, or in other units of local government; thus, a commission form of government with blended powers may be established by statute unless otherwise prohibited by the constitution. . . ." 52 So.2d at 734; see also citations therein; and Wilson v. City of New Orleans, 466 So.2d 726 (La.App. 4th Cir. 1985).
The separation of powers doctrine within our state constitution is not applicable in the interpretation of the East Baton Rouge Parish plan of government. The plan could specifically provide for a similar separation of powers clause, but no such provision is reflected therein. For this reason, the plan may provide for "blended powers" crossing over the traditional boundaries of the legislative and executive branches, without violating state constitutional law.
Now addressing your specific questions, we note that the terms of the plan of government control in the resolution of these issues. Where the provisions of the plan can be given a reasonable construction, and where the interpretation is not violative of state law, the plan should be implemented according to its terms.
ISSUE I
 (1) During a period in which the President Pro-Tempore is acting as Mayor-President, may the President Pro-Tempore preside over a Council meeting and vote on all Council agenda items?
The opinion of this office is in the affirmative. Section 4.05 of the plan of government provides:
 The President Pro-Tempore shall preside over the meetings of the Metropolitan Council with the right to speak and to vote. If the Mayor-President is absent from the Parish and City or otherwise temporarily disabled from performing his duties the President Pro-Tempore shall act as Mayor-President and in the case of vacancy in the office of Mayor-President shall serve as such until the vacancy is filled as hereinafter provided.
This section empowers the President Pro-Tempore to preside over council meetings and empowers him to vote. This section further mandates that the President Pro-Tempore perform the duties of the Mayor-President in his absence. There is no language within the plan prohibiting the President Pro-Tempore from voting while he is serving as acting mayor. For this reason, the President Pro-Tempore may preside over the meeting and vote while acting as Mayor-President.
ISSUE II
 (2) Does Section 2.05 of the Plan of Government prohibit the President Pro-Tempore from receiving compensation for her President Pro-Tempore duties when she is acting as Mayor-President?
The opinion of this office is in the negative. Section 2.05 of the plan provides:
 The salary of each councilman shall be $300.00 per month. Except for travel allowances authorized by law, the members of the metropolitan council shall receive no other compensation. This amendment shall become effective as of midnight, December 31, 1966.
We interpret Section 2.05 as contemplating that a council member is prohibited from receiving additional monies for serving in the position of council member. We do not interpret this section to prohibit the President Pro-Tempore from receiving compensation for serving in the separate position of Acting Mayor.
ISSUE III
 (3) Does Section 2.10 of the Plan of Government prohibit a Council member from voting for herself or himself for President Pro-Tempore?
The opinion of this office is in the negative. Section 2.10 provides, in part:
 Any member of the Metropolitan Council who shall have any personal or private pecuniary interest in the adoption or passage of any ordinance, resolution, motion or measure, by the Council, shall declare such fact to said body, and shall refrain from voting on the same at any time, whether on final passage or otherwise. . . . (Emphasis added).
Section 4.05 of the plan of government requires the elected President Pro-Tempore to assume the responsibilities of Acting Mayor when the Mayor-President is absent. However, a review of the plan of government reflects no authorization for the President Pro-Tempore to receive any compensation for serving as Acting Mayor.
We are advised that after the election of President Pro-Tempore, it has been the practice of the council to provide by ordinance for the compensation of the President Pro-Tempore while performing the duties and functions of Acting Mayor-President. However, at the time the vote is taken to elect the President Pro-Tempore, there exists no authorization for compensation, and accordingly no "pecuniary interest" in that position exists for any of the council members. Further, provision for compensation in this instance is not required, but rather is a discretionary decision within the power of the council. A decision by the council to forego compensation would effectively remove the objection predicated on Section 2.10. For these reasons, we are of the opinion that Section 2.10 does not prohibit any council member from casting his vote in his own favor when electing the President Pro-Tempore. Other possible resolutions of the issues addressed herein regarding application of state ethics laws should be referred to the State Ethics Commission.
In summary, it is the opinion of this office that the President Pro-Tempore may preside over the council meeting and concurrently exercise a vote in the transaction of business. A council member may cast a vote in his own favor in the election of the President Pro-Tempore. Finally, the President Pro-Tempore may receive both compensation for serving as council member, and compensation for serving as Acting Mayor.
Should you have further inquiries in which we may be assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0204E