Dear Mr. Simon:
This office is in receipt of your opinion request under letter dated May 20, 1993. The request has been assigned to me for resolution.
The City of New Iberia is organized under the provisions of a special legislative charter. The Mayor and the Board of Trustees constitute the governing body of the city. The Board of Trustees consists of seven members, six of whom are elected from districts and one who is elected from the city at large. See Charter, Section 7(a) and (b).
You raise three questions for our review:
 (1) What is the correct number of votes necessary to override the mayor's veto?
 (2) May a trustee who is serving as mayor pro tempore simultaneously serve and vote in his capacity as trustee?
 (3) Is the number of votes necessary to override a mayor's veto reduced when a trustee serves as mayor pro tempore?
At the outset, we address two arguments related in this matter. First, it is suggested that the conclusion of the author in Attorney General Opinion Number 90-149 is controlling. Therein, the author stated that in a Lawrason Act municipality, a councilman may not vote in his capacity as councilman while serving as mayor pro tempore.
The opinion is not dispositive of the instant matter because your city has not yet elected to be governed by the provisions of the Lawrason Act, LSA-R.S. 33:321, et. seq. LSA-R.S. 33:321 provides, in pertinent part:
 All municipalities shall be governed by the provisions of this Part except those municipalities governed by a special legislative charter, . . . (Emphasis added).
The Lawrason Act statutes do not apply to municipalities operating under a special legislative charter and the Act's provisions do not apply where the special legislative charter is silent on a particular matter. See Attorney General Opinion Number 87-452, a copy of which is enclosed.
Second, as you suggest, the case of Burstein v. Morial,438 So.2d 554 (La. 1983), is helpful in the construction of certain provisions of the City of New Iberia special legislative charter. However, the case does not stand for the general proposition that a member of a council who is appointed mayor pro tempore must in every instance refrain from exercising his vote as council member. In Burstein, supra, Section 4-204(3) of the charter of the city of New Orleans contained specific language stating a "[councilman] . . . while serving as acting mayor . . . shall not perform his duties as a member of the council". Burstein, 438 So.2d at 560. We find no such prohibitory language present in the provisions of the special legislative charter of the City of New Iberia. For this reason, the Burstein case is distinguishable and does not govern on this particular point.
We must look to the provisions of the special legislative charter of the City of New Iberia in order to respond to your inquiries. In response to your first question, we are of the opinion that five votes are necessary to override the mayor's veto. Section 14 of the New Iberia special charter provides:
 He [the mayor] shall have no vote in the board meetings except in case of a tie vote when he shall give the casting vote. He shall have the right to veto any ordinance, law, resolution, or bylaw adopted by the board; and any ordinance, law, resolution, or bylaw so vetoed shall be resubmitted to the board, and if passed by the votes of two-thirds of the members of the board shall become adopted without his signature. (Emphasis added).
This provision can very simply be construed to mean what it states — "members of the board" means the total membership of seven trustees, not a "majority of the members of the board" which is the typical definition of a quorum. As seven trustees constitute the "members of the board", five votes are necessary to fulfill a two-thirds vote of the membership. Therefore, five votes are necessary to override the mayor's veto.
In response to your second question, we again must refer to the specific language of the charter. Section 7 (b)(3) of the New Iberia special legislative charter provides, in part:
 Mayor pro tempore. The trustee elected at large shall serve as mayor pro tempore, who, in the absence or inability of the mayor to act, shall exercise all the rights and powers of the office of mayor.
Under the provisions of the charter, the Mayor has no vote in the board meetings except in the case of a tie vote. As the powers of the mayor pro tempore are defined as identical to those powers allocated the mayor, the mayor pro tempore also has a vote only in the instance of a tie while serving in his capacity as mayor. We find nothing in those portions of the charter submitted to us which would prohibit that trustee from continuing to exercise his power to vote in his capacity as trustee, while simultaneously serving as mayor pro tempore. As mentioned above, the Burstein case is distinguishable on this basis. Here, it is our opinion this trustee may continue to cast his vote as trustee, while serving as mayor pro tempore, for or against any matter on the agenda, including an override of the mayor's veto. See Attorney General Opinion Number 93-141, attached.
Finally, in response to your third inquiry, language in the case of Burstein, supra, is applicable. As noted, it is our opinion that a trustee will continue to have those powers allocated him under the charter while serving as mayor pro tempore in the absence of specific language in the charter imposing limits on his authority in such circumstances. We are of the opinion that a trustee's appointment to serve as acting mayor "does not serve to reduce the council's membership or the proportion of it required to overcome the qualified executive veto". Burstein, supra, 438 So.2d at 560. It is our opinion that the membership of the board of trustees remains seven in such circumstances, and that five votes continue to be necessary to override the mayor's veto.
Please note that the separation of powers doctrine within our state constitution (LSA-Const. Art. II, Section 2) is not applicable in the interpretation of the City of New Iberia special legislative charter. The charter could specifically provide for a similar separation of powers clause, but no such provision is reflected therein in the portions of the charter sent to us. For this reason, implementation of the special legislative charter may require acknowledgment of certain "blended powers" which cross over the traditional boundaries of the legislative and executive branches. See City of New Orleans v. Borey, 52 So.2d 728 (La.App. 1951) and attached Attorney General Opinion Number 93-141.
We hope the foregoing is helpful and responsive to the questions raised within your opinion request. Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0257E